IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **PAULA WHITE**, Personal Representative of THE ESTATE OF VIRGIL WHITE former resident of the Town of Athens, County of Somerset, State of Maine<br><br>Plaintiff,<br><br>v.<br><br>**SOMERSET COUNTY,** State of Maine<br><br>and<br><br>**DALE P. LANCASTER**, in his official and individual capacity as Sherriff of Somerset County,<br><br>and<br><br>**MICHAEL PIKE**, in his official and individual capacities as Assistant Administrator of Somerset County Jail,<br><br>and<br><br>**JOSHUA BOWDEN**, in his official and individual capacity as a Supervisor of Somerset County Jail,<br><br>and<br><br>**SAMUEL URSZINYI,** in his official and individual capacities as an Employee and Corrections Officer in the Somerset County Jail<br><br>Defendants. | CASE NO.<br><br>JUDGE:<br><br>**COMPLAINT** |

## I. PRELIMINARY STATEMENT

1. This civil rights case challenges the Defendants' failure to provide adequate mental and physical health care to an inmate suffering from mental illness while incarcerated in the Somerset County Jail (here "The Jail"). The Somerset County Jail is a facility owned and

1

operated by the County of Somerset, State of Maine, and is located in Madison, Maine. Virgil White (the "Decedent") entered the Somerset County Jail on January 23, 2022 on charges that were pending at the time of his death. On December 5, 2022, he died from hanging and asphyxiation while he was housed at Somerset County Jail. Defendants knew Decedent was suffering serious symptoms of mental illness because he was well known to the Defendants as having serious mental health issues. The Decedent exhibited many red flag symptoms in the weeks and months leading up to the morning he died under their direct supervision. Paula White, the personal representative of the Decedent's estate, brings this action to secure fair compensation and to encourage these and similar defendant state actors to fulfill their known responsibility in providing safe and effective medical treatment and supervision to detainees suffering from serious medical and mental health conditions.

## II.   JURISDICTION

2. This claim is brought under the Civil Rights Act of 1871, 42 U.S.C § 1983. This Court has jurisdiction to hear this claim under 28 U.S.C. §§ 1331, 1343 (3) and (4). Jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367. The venue is proper in this District.

## III.   THE PARTIES

3. Paula White, the mother of the Decedent, brings this suit as the Personal Representative of the Estate of the Decedent for the benefit of his kin and heirs.

4. The Decedent was a resident of Athens, County of Somerset, Maine.

5. Defendant Dale P. Lancaster was the Sheriff of Somerset County, State of Maine, at the time of the incident, and in his capacity as Sheriff of Somerset County had responsibility for the oversight and operations of the Somerset County Jail and is a "person" under 42 U.S.C. § 1983 and is being sued in his individual and official capacities.

6. Defendant Michael Pike was, at all times relevant, the Assistant Jail Administrator of Somerset County Jail, is a "person" under 42 U.S.C. § 1983 and is being sued in his individual and official capacities.

7. Defendant Joshua Bowden was, at all times relevant, Supervisor of Corrections Officers of Somerset County Jail, is a "person" under 42 U.S.C. § 1983 and is being sued in his individual and official capacities.

8. Defendant Samuel Urszinyi was, at all times relevant, a Corrections Officer of Somerset County Jail, is a "person" under 42 U.S.C. § 1983 and is being sued in his individual and official capacities.

## IV.   FACTS

9. On or about October 3, 2022, the Decedent was transferred to the Jail from another facility and was being held on bail for criminal charges in the Franklin County Unified Criminal Court.

10. Upon information and belief, when an inmate is booked into the Somerset County Jail, a corrections officer is supposed to ask several questions, including questions about suicide risk evaluation and mental health status.

11. The Decedent was well known to the Defendants and was well known to have severe mental health issues and, specifically, Defendants knew or should have known that he posed a risk of suicide.

12. Upon information and belief, during booking the Decedent also provided a personal medical history to a member of the Jail nursing staff.

13. Upon information and belief, the Decedent extensively, and over a long period of time, specifically at the Somerset County Jail, sought mental health treatment before acting on suicidal ideation.

14. "Strange" behavior by Decedent was witnessed by the Jail's staff upon arrival and up to his death.

15. On or around October 25, 2022, a mental health re-assessment form noted that "Inmate is psychiatrically unstable. It is my recommendation for this inmate to be admitted to a Psychiatric Hospital."

16. On or around November 3, 2022, Decedent was "blue papered" and admitted to Riverview Psychiatric Center.

17. On or around November 23, 2022, Decedent was discharged from Riverview Psychiatric Hospital and brought back to the Jail.

18. The Jail was provided medical records from Riverview Psychiatric Hospital "in the interest of continued observation" and staff of the Jail spoke with staff from Riverview Psychiatric Hospital about the Decedent's treatment and behavior.

19. Staff of the Jail were aware that Decedent had "tied something around his neck (leaving marks) during his stay".

20. Upon his return to the Jail, Decedent was placed on full restrictions, including being placed in a smock.

21. On or around December 3, 2022, a jail issued uniform was returned to Decedent and he was no longer required to wear the smock.

22. On the morning of December 5, 2022, Defendant Urszinyi knew that Decedent was acting "weird".

23. On December 5, 2022, the Decedent died at the Somerset County Jail.

24. Defendants took insufficient precautions, despite prior warning and notice, to prevent harm coming to the Decedent.

25. Upon information and belief, corrections staff are required to observe detainees every 15 minutes and memorialize what they observe in a jail log.

26. Corrections staff have certain requirements, processes, and procedures that constitute best practices or requirements in determining whether the detainees in their care are "living, breathing flesh" while in custody.

27. Defendants failed to adequately train corrections staff on how to safeguard detainees with mental health conditions.

28. Defendants failed to ensure adequate staffing to safeguard detainees, both generally and specifically, during Decedent's pretrial detention.

29. Defendants failed to adequately or appropriately train corrections staff on proper procedures to safeguard detainees in their care.

30. Defendants failed to adequately enforce policies or discipline corrections staff to adhere to proper procedures necessary to safeguard detainees.

31. Upon information and belief, Defendants displayed deliberate and depraved indifference to the safety of detainees in their custody.

32. Upon information and belief, the precise manner of Decedent's death—ligature strangulation—was one in which maximum pain and suffering were induced.

33. After being ignored by the Defendants who were aware of his significant mental health problems, the Decedent gained access to materials and asphyxiated himself.

34. Defendants were each deliberately indifferent to Decedent's apparent medical needs. Defendants knew or should have known that Decedent had a history of severe mental illness and was suicidal.

35. Despite this knowledge, each failed to provide or obtain the necessary emergency medical care that the Decedent required. This failure by each was negligent, knowing, intentional,

willful, wanton, reckless, and deliberately indifferent. As a result, Decedent suffered extreme, extended pain and anguish and eventual death.

36. Defendants were also deliberately indifferent to the serious medical needs of the Decedent by failing to train and supervise corrections staff and failing to establish and implement jail policies, practices, customs, and usages that trained and enabled the same staff to appropriately respond to detainees' serious medical needs, including those manifested by Decedent.

37. Defendants were on notice that detainees housed in the Jail may suffer from serious medical conditions like those suffered by Decedent and were specifically aware of Decedents serious mental health conditions.

38. Defendant Urszinyi did not check on Decedent for over an hour during a time period crucial to Decedent's health and wellbeing.

39. Defendant Urszinyi was supervised by Defendant Bowden.

40. Defendant Bowden was well known to many employees of the Somerset County Jail as a supervisor who would display distain, indifference, and disrespect toward the inmate population, including pre-trial detainees, and referred to the population placed in his custody and care as "slugs" or worse.

41. Defendant Bowden was in turn supervised by the other defendants who continued to employ and promote Defendant Bowden despite known problems with his conduct and performance.

42. The negligent, reckless, willful, wanton, malicious, and in bad faith conduct of all Defendants shocks the conscience, violates the standards of all decency in an evolving society, and betrays the trust that detainees and the public place in jail staff when they

deprive detainees of the means to take care of themselves, making them dependent on the jail staff for all of their basic needs including but not limited to security and medical care.

## COUNT I
## 42 U.S.C. § 1983
### Denial of Rights in Violation of the Eighth Amendment and Fourteenth Amendment; Deliberate Indifference to Medical Needs

43. The Plaintiff repeats, re-avers, and realleges each and every allegation contained in paragraphs one through 33 as if expressly set forth herein.

44. Defendants are responsible for the training of corrections officers and ensuring the adequate policies and procedures of the Somerset County Jail are developed and complied with by corrections officers and other employees to ensure that detainees such as Decedent receive adequate medical attention and treatment, including preventative treatments due to self-harm risks.

45. Defendants took no actions or interventions which would have saved the Decedent's life, despite having such an opportunity to do so.

46. Defendants displayed animosity and a lack of concern about the human beings in their care, even during acute and life-threatening medical events.

47. The inactions and deliberate indifference of both corrections officers and supervisory staff violated the Decedent's clearly established rights.

48. All of the Defendants were acting in the scope of their official duties and under the color of state law.

49. The Defendants' specific failure to act during a clear medical event presented a substantial risk of serious harm to Decedent and demonstrated deliberate indifference to serious, and obvious, medical needs.

50. Deliberately and/or indifferently allowing a pre-trial detainee to die from a treatable medical condition is a cruel and unusual punishment in violation of the Eighth Amendment.

51. Defendants' actions "Shock the Conscience."

52. Defendants' actions and inactions were done with deliberate indifference or malice.

WHEREFORE, the Plaintiff demands judgment against the Defendants plus compensatory damages, punitive damages, attorney's fees, interest, costs, and such other and further relief as this Court deems just and proper.

## COUNT II
## 42 U.S.C. § 1983
## Failure to Train and Supervise in Violation of the Eighth Amendment

53. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs one through 44 as if expressly set forth herein.

54. Observing corrections officers and supervising corrections officers were not trained in the proper action to take when observing a person having serious medical difficulties, and/or the training and policies established and implemented by Defendants were inadequate to assure that the Decedent received adequate and humane treatment while incarcerated.

55. Defendants' failure to adequately create policy, to enforce existing policy, and to train corrections officers in appropriate policy that would have the effect of preventing adverse health outcomes in detainees suffering from acute mental health crises demonstrated indifference to, and callous disregard of, the health and wellbeing of detainees.

56. Defendants' failure to appropriately train and supervise corrections officers under their control, and the failure of Defendants to in fact act appropriately to medical events, directly and proximately caused the Decedent to suffer physical harm, severe emotional distress, pain, suffering, and ultimately death.

57. Defendants' clear and deliberate indifference in failing, in an administrative and supervisory role, to provide training and supervision to their employees in such a manner

that put detainees at a substantial risk of serious harm contributed to Decedent's civil rights deprivation.

58. Defendants were so indifferent to the needs of detainees, that they tolerated and encouraged a culture of dehumanization and mistreatment of detainees, directly supporting and cultivating a malicious disregard to the constitutional needs of individuals under their custody and care.

59. Decedent's suffering and death were a proximate cause of Defendants' wanton disregard for his constitutional rights.

WHEREFORE, Plaintiff respectfully requests damages, punitive damages costs, and such other relief as this Court deems just and proper.

### COUNT III
### Me. Rev. Stat. tit. 18-C, § 2-807; Me. Rev. Stat. tit. 14, § 8104-C
### Pendent State Claim—Wrongful Death

60. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs one through 50 as if expressly set forth herein.

61. All of the Defendants, and each of them, had the duty to provide immediate medical care to the Decedent and to protect the Decedent from self-harm or accidental suicide. Staff failed and/or refused to summon and provide necessary medical care to address the Decedent's serious and obvious medical condition.

62. Among other negligent acts or omissions, the Defendants failed to provide regular and continuous observation and supervision of the activities of the Decedent.

63. Despite the Defendants' actual and/or constructive knowledge of the Decedent's need for medical care, the Defendants negligently failed or refused to provide the Decedent with adequate medical assistance, thereby breaching duties they owed to the Decedent.

64. As a legal and proximate result of the Defendants' failure to provide adequate medical care and to protect the Decedent from preventable harm and injury, the Decedent suffered great physical pain and, ultimately, death,

65. The Defendants committed reckless and conscious disregard for the Decedent's well-being while he was in their custody and care, leading to his death.

WHEREFORE, Plaintiff respectfully requests damages, punitive damages costs, and such other relief as this Court deems just and proper.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that this Court:

A. Award Plaintiff compensatory damages in an amount to be shown at trial;

B. Award Plaintiff punitive damages in an amount to be shown at trial;

C. Award Plaintiff reasonable attorney's fees, costs, and disbursements;

D. Pre and post-judgment interest; and

E. Grant Plaintiff such additional relief as the Court deems just and proper.

Dated in Augusta, Maine, on May 24, 2024.

Respectfully Submitted,

*/s/ Stephen C. Smith*
Stephen C. Smith, Esq., Bar No. 8720
Attorney for Plaintiff
STEVE SMITH Trial Lawyers
191 Water Street
Augusta, ME 04330
T (207) 622-3711
F (207) 707-1036
*Info@MaineTrialLaw.com*